E-FILED; Baltimore City Circuit Court
Docket: 7/30/2026 12:02 AM; Submission: 7/30/2026 12:02 AM
Envelope: 27579965

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

**TIONNE SCRIBNER,**
*Individually and as the Personal Representative of the Estate of Evin Alan Scribner*,
3717 Pinlea Road
Pikesville, MD 21208

and

**PAUL SCRIBNER,**
c/o Hansel Law, P.C.
2514 North Charles Street
Baltimore, MD 21218,

*Plaintiffs*,

v.

**STATE OF MARYLAND**
Serve: Dereck E. Davis, *Treasurer*
80 Calvert Street
Annapolis, MD 21401

and

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES**
Seve: Carolyn J. Scruggs, *Secretary*
6776 Reisterstown Road
Baltimore, MD 21215

and

**WARDEN GREGORY A. WERNER**
*Individually and in His Official Capacity as a DPSCS Warden*
18601 Roxbury Road
Hagerstown, MD 21746

and

*** Jury Trial Demanded**

**Case No.:** C-24-CV-26-005225

**CO SULAIMAN**
*Individually and in their official capacity as*
*a DPSCS Correctional Officer*
18601 Roxbury Road
Hagerstown, MD 21746

and

**CO CASKEY**
*Individually and in their official capacity as*
*a DPSCS Correctional Officer*
18601 Roxbury Road
Hagerstown, MD 21746

and

**CO EMERSON**
*Individually and in his official capacity as*
*a DPSCS Correctional Officer*
18601 Roxbury Road
Hagerstown, MD 21746

*Defendants*.

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiffs, by and through attorneys Cary Hansel, Tiana Boardman, and Hansel Law, P.C., and sues the above-named Defendants State of Maryland, Department of Public Safety and Correctional Services, Warden Gregory Werner, Officer Sulaiman, Officer Caskey, and Officer Emerson, stating as follows:

## INTRODUCTION

1. This action is brought by Plaintiff as a result of the preventable suicide of Evin Scribner ("Decedent" or "Mr. Scribner") while he was prisoner in the custody of the Maryland Division of Correction at Maryland Correctional Institution–Hagerstown ("MCI-H").

2. Despite notice from Mr. Scribner's own mother that she had concerns regarding her son's mental health, and despite institutional policies requiring regular security rounds of the tiers, Mr. Scribner was left unsupervised for extended, repeated periods that evening, including a gap of approximately two (2) hours and then another gap of approximately (10) minutes immediately preceding his death, during which no security round was conducted.

3. Mr. Scribner was housed alone in cell H-1-33, when he hung himself with a bedsheet tied to his bunk.

4. As documented in DPSCS's Intelligence and Investigative Division Report No. 23-35-01504, DPSCS's investigators determined that the shift logbook maintained by the tier officer misrepresented that security rounds had been conducted when, in fact, they had not, and DPSCS thereafter opened a separate administrative investigation, Reference No. 23-35-01512, into that officer's conduct.

5. The negligence and/or gross negligence of Defendants caused or contributed to Mr. Scribner's death.

6. In addition, and in the alternative, Defendants' conduct constituted deliberate indifference to Mr. Scribner's established rights under the Maryland Declaration of Rights.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction pursuant to Md. Code, Cts. & Jud. Proc., § 6-102, as Defendants are domiciled in the State of Maryland and/or are organized under the laws of Maryland and have their principal place of business in the State of Maryland.

8. Venue is proper pursuant to Section 6-201 of the Courts and Judicial Proceedings Article of the Maryland Code because the incident occurred at a Department of Public Safety and

Correctional Service ("DPSCS") correctional facility and DPSCS is headquartered in Baltimore City, Maryland.

9. Plaintiff provided notice of his claim via certified mail and facsimile within one year of the date of the incident subject to this lawsuit, as required by Md. Code, Cts. & Jud. Proc., § 5-304(b) and (c), and Maryland Tort Claims Act, Sections 12-101 *et seq.* of the State Government Article, and Plaintiff is in full compliance with said Act insofar as it applies to the instant case. All conditions have been fully satisfied precedent to filing suit.

10. The amount in controversy exceeds $75,000.

**PARTIES**

11. Plaintiff Tionne Scribner ("Ms. Scribner") is the surviving mother of the decedent and, at all times relevant hereto, was an adult citizen of Maryland. Plaintiff brings this action individually and as appointed Personal Representative of the Estate of Evin A. Scribner.

12. Plaintiff Paul Scribner ("Mr. P. Scribner") is the surviving father of the decedent and, at all times relevant hereto, was an adult citizen

13. Defendant State of Maryland, Department of Public Safety and Correctional Services ("Defendant DPSCS") is an agency of the State of Maryland responsible for operating MCI-H, and has waived sovereign immunity to the extent set forth in the Maryland Tort Claims Act, MD. CODE ANN., STATE GOV'T § 12-104. Defendant DPSCS was responsible for, and had the duty to provide, care, safekeeping, and protection to all persons in its custody at MCI-H, including Mr. Scribner.

14. Defendant Gregory Werner ( "Defendant Werner") was, at all times relevant to the occurrences complained of herein, an adult resident of the State of Maryland, employed by the State of Maryland, and acting in his official capacity as Warden of MCI-H. At all times

relevant hereto, Defendant Werner was responsible for, among other things, the supervision, training, staffing, and discipline of correctional officers assigned to house Mr. Scribner, and for enforcement of institutional Post Orders governing security rounds. At all times relevant hereto, Defendant Werner acted under the authority and color of law.

15. Defendant Officer Sulaiman ( "Defendant Sulaiman") is an adult resident of Maryland and at all times relevant hereto was a Correctional Officer for DPSCS whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

16. Defendant Officer Caskey ( "Defendant Caskey") is an adult resident of Maryland and at all times relevant hereto was a Correctional Officer for DPSCS whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

17. Defendant Officer Emerson ( "Defendant Emerson") is an adult resident of Maryland and at all times relevant hereto was a Correctional Officer for DPSCS whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

18. All other unidentified DPSCS correctional officers and/or supervisors whose conduct is referred to herein were at all times relevant hereto employed by DPSCS, and who are responsible for the pattern and practice of misconduct discussed herein and were at all times relevant hereto acting under color of state law.

19. All Defendants are jointly and severally liable for damages and injuries to the Plaintiff described herein. All defendants are sued in their capacity as private individuals and as police officers.

**FACTS COMMON TO ALL COUNTS**

20. Evin Scribner was only twenty-four (24) years old when he was found hanging in his cell with a bed sheet.

21. His mother, Tionne Scribner, was concerned about her son's mental health and took steps to make sure DPSCS was aware as well. Previously, on September 29, 2022, Ms. Scribner petitioned for an emergency evaluation of her son which was granted.

22. The Court found probable cause to believe that Mr. Scribner showed the signs of having a mental health diagnosis.

23. Mr. Scribner was released from custody and then rearrested shortly thereafter, October 27, 2022, Mr. Scribner was arrested and taken to the Baltimore County Detention Center ("BCDC").

24. At his hearing, his attorney made a request for him to be released for outpatient mental and behavioral health care.

25. The Judge denied that request.

26. Mr. Scribner's attorney then filed a motion requesting that Mr. Scribner be sent to an in-patient mental health care facility because he had previously displayed indicators that he was suicidal.

27. Ms. Scribner called Baltimore County Detention Center

28. On March 21, 2023, Mr. Scribner pled guilty to second degree assault

29. On or about July 29, 2023, Mr. Scribner was a prisoner housed in the custody of DPSCS at MCI-H, 18601 Roxbury Road, Hagerstown, Maryland 21746.

30. He was not housed in an appropriate call.

31. During his intake interview, he informed the jail that he was suicidal.

32. He was not housed in an appropriate room.

33. If he was, he would not have had access to the bedsheet that he used to hang himself.

34. He would not have access to the surface that he used to hang himself.

35. At the time of his death, Mr. Scribner was twenty-four (24) years old and had a scheduled release date of May 19, 2025.

36. On or about July 12, 2023, Plaintiff Tionne Scribner contacted her son's case manager at MCI-H and specifically advised the institution that she had concerns regarding Mr. Scribner's mental health. Her concerns were ignored.

37. On or about that date, she spoke to her son, who was despondent and unusually withdrawn, and immediately knew that something was wrong.

38.

39. On that same date, July 12, 2023, Mr. Scribner refused to participate in a scheduled administrative segregation review.

40. Despite direct notice from Mr. Scribner's mother regarding his mental health, and despite his own same-day refusal to participate in a scheduled administrative segregation review, which was a change in behavior and adjustment problem that, under DPSCS's Clinical Guidelines for Suicide Prevention (Office of Programs and Services, Mental Health Services, issued June 15, 2011), should have triggered a Referral for Psychological Services (DPSCS

Form 124-400-1) and a mental health assessment within two hours. Defendants failed to complete any such referral, failed to conduct any further mental health evaluation of Mr. Scribner, failed to place him on any heightened observation or watch status, and took no additional precautions to protect him from self-harm.

41. On July 29, 2023, Mr. Scribner was housed alone in cell H-1-33 on Tier H-1 of MCI-H. He should not have been housed alone because he should have been on suicide watch.

42. If he was, he would not have been able to commit suicide.

43. Institutional Post Orders in effect at MCI-H required correctional staff assigned to Tier H-1 to conduct security rounds at regular, defined intervals throughout each shift, for the purpose of, among other things, observing the health, safety, and welfare of inmates housed on the tier.

44. Video surveillance footage of Tier H-1 for the evening of July 29, 2023, subsequently obtained and reviewed by DPSCS investigators, establishes that no security round was conducted on Tier H-1 for a period of approximately ninety-eight (98) minutes, from approximately 4:24 p.m. until 6:02 p.m.

45. The same surveillance footage documents two further extended periods that evening during which no staff member was present on Tier H-1 and no security round was conducted: from approximately 6:18 p.m. to 7:35 p.m. (approximately seventy-seven (77) minutes), and from approximately 7:53 p.m. to 10:03 p.m. (approximately two (2) hours and ten (10) minutes). The latter gap ending only shortly before Mr. Scribner was discovered during formal count at approximately 10:52 p.m.

46. The 4-to-12 shift logbook for Tier H-1, maintained by Defendant Caskey, is purported to document tier checks having been conducted at 5:00 p.m., 5:40 p.m., 6:00 p.m., 6:40 p.m., 7:15 p.m., 7:40 p.m., 8:00 p.m., 8:20 p.m., 9:00 p.m., 9:30 p.m., and 10:05 p.m.

47. Upon investigation, DPSCS's Intelligence and Investigative Division determined that these logbook entries were "not correct or factual" and did not reflect rounds actually conducted, and further determined that Defendant Caskey "did not conduct security rounds in a timely manner."

48. As a direct result of these findings, DPSCS opened a separate administrative investigation, Reference No. 23-35-01512, into Defendant Caskey's conduct.

49. At approximately 10:51 p.m. on July 29, 2023, Defendants Caskey and Sulaiman arrived on Tier H-1 to conduct a formal count.

50. At approximately 10:52 p.m., Defendant Sulaiman discovered Mr. Scribner unresponsive in cell H-1-33, hanging from a bedsheet that was tied around his neck and secured to the top of his bunk.

51. Defendant Sulaiman removed the sheet from Mr. Scribner's neck while Defendant Emerson and other officers initiated CPR, and an automated external defibrillator (AED) was applied.

52. Boonsboro Rescue Service personnel arrived at approximately 11:20 p.m. and continued life-saving measures.

53. At approximately 11:25 p.m., Mr. Scribner was pronounced dead at the scene by Paramedic Eisenhauer.

54. No suicide note or written message was found in Mr. Scribner's cell.

55. An autopsy performed on July 31, 2023 by the Office of the Chief Medical Examiner documented petechial hemorrhage and ligature marks on Mr. Scribner's neck. Postmortem toxicology testing was negative for drugs and alcohol. The manner of death was certified as suicide by hanging.

56. The evening of July 29, 2023 included multiple extended periods during which no staff member was present on Tier H-1 and no security round was conducted, including a gap of approximately two hours and ten minutes from 7:53 p.m. to 10:03 p.m., the period immediately preceding Mr. Scribner's death. Additionally, there was an earlier gap of approximately ninety-eight (98) minutes from 4:24 p.m. to 6:02 p.m.

57. Fashioning a ligature from a bedsheet and securing it to the top bunk necessarily required a period of uninterrupted time and privacy, both of which these unsupervised gaps provided.

58. Had Defendants conducted the security rounds required by institutional policies and procedures, it is more likely than not that Mr. Scribner's suicide attempt would have been thwarted, and life-saving intervention rendered.

59. Had Defendants complied with their own policy, DPSCS's Clinical Guidelines for Suicide Prevention, following the notice received on July 12, 2023, Mr. Scribner would more likely than not have undergone the mental health assessment required by that policy within two (2) hours of referral.

60. Given the risk factors documented in Mr. Scribner's own record, a family member's direct report of mental health concerns, and his same-day refusal to participate in a scheduled segregation review, that assessment would more likely than not have resulted in a finding of at least Low Risk under the policy's own risk-classification framework, requiring, at

minimum, placement in Close Observation status with corresponding restrictions on property, including bed linens, and observation at a frequency greater than what he actually received. It is more likely than not that this heightened observation and restriction would have prevented his death.

61. As a direct and proximate result of Defendants' conduct described herein, Mr. Scribner suffered conscious pain and suffering, including strangulation and panic, prior to his death. In addition, having been left without the mental health evaluation, referral, or heightened observation called for after his mother's notice of concern and his own refusal to participate in a scheduled segregation review, Mr. Scribner endured the period leading up to his death without any of the intervention or support that Defendants' own policies were designed to provide. Plaintiff has also suffered severe emotional pain and suffering, including grieving over the preventable loss of her son's life, loss of sleep, anxiousness, extreme sadness, and loss of enjoyment of life, as well as significant economic damages including funeral and burial expenses.

62. Mr. Scribner’s death is not an isolated incident, but is reflective of broader patterns and practices at MCI-H and within DPSCS regarding the supervision of inmates, the training and supervision provided to correctional officers, and the failure to ensure the accuracy of institutional security logs.

63. Defendant Werner, as Warden of MCI-H, failed to adequately train, supervise, and discipline correctional staff regarding compliance with mandatory security rounds, and failed to implement adequate controls to ensure the accuracy of shift logbooks documenting the completion of those rounds.

64. Upon information and belief, Defendant Werner's failure to enforce compliance with institutional policies and procedures, and DPSCS's apparent lack of any routine mechanism to audit or cross-check tier logbooks against available video surveillance absent a triggering incident such as a death, fostered an environment in which correctional staff, including Defendant Caskey, were able to record inaccurate security round entries that went undetected until after Mr. Scribner's death, directly endangering the lives of inmates housed at MCI-H.

65. All allegations herein, however worded, are pleaded in the alternative as acts of negligence, gross negligence, intent, and/or malice.

66. Defendants and/or any other unnamed officers committed each of the acts knowingly, intentionally, and maliciously. As a result, Mr. Scribner is entitled to an award of compensatory and punitive damages.

67. In the alternative, at all times relevant hereto, the Defendants acted with negligence and/or gross negligence in violation of the lawful duties owed to Mr. Scribner.

68. As a direct and proximate result of the aforementioned conduct, actions, and inactions of Defendants, as well as those stated elsewhere herein, Plaintiffs were caused to suffer and continue to suffer mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, and loss of enjoyment of life.

69. Plaintiff further alleges that all of his injuries, losses, and damages related to this incident were caused solely by the actions of Defendants, as set forth above, without any negligence, want of due care, or provocation on the part of Plaintiffs, either directly or indirectly.

70. Defendants' acts abused their power and were used to oppress the decedent.

71. Defendants' actions and inactions were a foreseeable cause of the injuries sustained by the decedent.

72. At all times relevant hereto, Defendants subjected Plaintiffs to the deprivation of his rights with actual or implied malice, in an unreasonable and unnecessary fashion, and/or in the alternative: negligently, grossly negligently, intentionally, and/or maliciously.

73. Defendants' acts subjected Plaintiffs to a deprivation of their constitutional rights and privileges.

**COUNT I - MARYLAND DECLARATION OF RIGHTS**
**ART. 16, 19, 24, 25, and 26 - FAILURE TO PROTECT FROM SUICIDAL ACTION**
**(Against All Defendants)**

53. Every paragraph not falling under this Count is incorporated herein by reference.

54. Defendants engaged in conduct that violated Mr. Scribner's rights as protected under the Maryland Declaration of Rights, including his rights to personal security and protection, and his right to receive necessary medical and mental health treatment while in custody, under Articles 16, 19, 24, 25, and 26.

55. Mr. Scribner was at all times an inmate in the custody of DPSCS and was therefore entitled to confinement in an environment that offers reasonable protection from harm, and to necessary medical and mental health treatment while in that custody. Under Articles 16, 19, 24, 25, and 26, Defendants owed Mr. Scribner a duty to institute and enforce policies to maintain his safety and well-being while in custody, to adequately supervise and monitor him, and to provide him with necessary mental health evaluation and treatment when put on notice of a risk to his well-being.

56. By the conduct described herein, Defendants deprived Mr. Scribner of his rights under Articles 16, 19, 24, 25, and 26, including, but not limited to, freedom from prison officials'

and employees' deliberate indifference and/or unreasonableness to the health and safety of inmates.

57. Defendants had actual notice, through Plaintiff's July 12, 2023 communication to Mr. Scribner's case manager, that Mr. Scribner's mother had concerns regarding his mental health, and had further notice, through Mr. Scribner's own conduct that same day, that he had refused to participate in a scheduled administrative segregation review.

58. Under DPSCS's Clinical Guidelines for Suicide Prevention, this combination of notice and behavioral change should have triggered a Referral for Psychological Services (DPSCS Form 124-400-1) and a mental health assessment within two (2) hours of referral or notification. Despite this, Defendants failed to complete any such referral, failed to conduct any further mental health evaluation, failed to place Mr. Scribner on any heightened observation status, and failed to conduct the security rounds required by Post Orders, including a gap of approximately two (2) hours and ten (10) minutes with no round whatsoever immediately preceding Mr. Scribner's death.

59. Defendants' failure to complete a Referral for Psychological Services (DPSCS Form 124-400-1) and obtain a mental health assessment, as required under DPSCS's own Clinical Guidelines for Suicide Prevention following notice received on July 12, 2023, constituted a denial of necessary mental health treatment to which Mr. Scribner was entitled while in Defendants' custody, independent of and in addition to Defendants' failure to conduct the security rounds required by Post Orders.

60. Defendants acted with deliberate indifference and/or unreasonableness to Mr. Scribner's established rights when they repeatedly and flagrantly disregarded the security rounds required for Tier H-1 across three separate, extended periods that same evening when they

falsely documented in the shift logbook that those rounds had been performed, and when they failed entirely to respond to actual notice of his mental health risk. This was not an isolated oversight, but a sustained pattern of disregard for Mr. Scribner's safety over the course of a single shift.

61. Had Defendants performed the security rounds required by Post Orders, it is more likely than not that Defendant Sulaiman, Defendant Caskey, and/or Defendant Emerson would have discovered Mr. Scribner prior to, during, or immediately after, the act of hanging himself, and his death would have been prevented. Independently, had Defendants completed a Referral for Psychological Services and mental health assessment as required under DPSCS's own Clinical Guidelines for Suicide Prevention, Mr. Scribner would more likely than not have been placed in a safe or observation cell with restrictions on property including bed linens, continuous or frequent staff observation, and other precautions mandated by that policy for at-risk offenders — any one of which would more likely than not have prevented his death.

62. As a direct and proximate result of Defendants' actions, Mr. Scribner suffered significant physical pain and suffering, including strangulation and ligature injury, and ultimately loss of life. Plaintiff has also suffered severe emotional pain and suffering, including grieving over the preventable loss of her son's life, loss of sleep, anxiousness, extreme sadness, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, and attorneys' fees, and punitive damages in an amount to be determined at trial, and such other and further relief as the nature of the case requires, including declaratory and injunctive relief declaring the conduct

which is the subject of this Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

**COUNT II**
**NEGLIGENCE**
**(Against All Defendants)**

63. Every paragraph not falling under this Count is incorporated herein by reference.

64. Defendants had a duty to provide care, safekeeping, and protection to Mr. Scribner, and not to create or maintain a dangerous condition that could harm persons under their control.

65. 52.Defendants had a special duty to Mr. Scribner arising from the custodial relationship between Defendants and Mr. Scribner.

66. 53. Defendants breached their duty of reasonable care by, among other things:

67. a.failing to conduct security rounds on Tier H-1 as required by Post Orders, including a gap of approximately two (2) hours and ten (10) minutes immediately preceding Mr. Scribner's death, as well as additional unsupervised periods earlier that same evening;

68. b.falsely recording in the shift logbook that rounds had been conducted when they had not;

69. c. failing to respond to Plaintiff's July 12, 2023 notice regarding Mr. Scribner's mental health, and to Mr. Scribner's own same-day refusal to participate in a scheduled segregation review, by completing a Referral for Psychological Services (DPSCS Form 124-400-1) or otherwise obtaining the mental health assessment required under DPSCS's own Clinical Guidelines for Suicide Prevention; and

70. D. failing to proactively enforce compliance with mandatory security rounds prior to Mr. Scribner's death, despite the existence of video surveillance capable of detecting such

noncompliance, and instead only investigating and enforcing compliance after Mr. Scribner had already died;

71. 54.Had Defendants performed and accurately documented the security rounds required for Tier H-1, and had Defendants responded appropriately to notice of Mr. Scribner's mental health risk, it is more likely than not that Mr. Scribner's death would have been prevented.

72. 55. As a direct and proximate result of Defendants' negligence, Mr. Scribner suffered significant physical pain and suffering, and ultimately loss of life, and Plaintiff has suffered severe emotional and economic damages as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, and attorneys' fees, and such other and further relief as the nature of the case requires.

**COUNT III**
**GROSS NEGLIGENCE**
**(Against All Defendants)**

56.Every paragraph not falling under this Count is incorporated herein by reference.

57. Defendants acted with gross negligence and/or malice when Mr. Scribner, under their custody and care, was left unsupervised for extended, repeated periods that evening, including a gap of approximately two (2) hours and ten (10) minutes immediately preceding his death and was permitted to fatally hang himself with a bedsheet, while Defendant Caskey simultaneously recorded false logbook entries misrepresenting that rounds had been conducted.

58. Defendants were on actual notice, through Plaintiff's July 12, 2023 communication, that Mr. Scribner's mother had concerns regarding his mental health, and were separately on notice, through Mr. Scribner's own refusal that same day to participate in a scheduled segregation review, of a change in his behavior and adjustment that, under DPSCS's own

Clinical Guidelines for Suicide Prevention, warranted a Referral for Psychological Services and mental health assessment within two (2) hours. Defendants nonetheless failed to complete any such referral and took no additional precautions.

59.Defendants' conduct in failing to perform mandatory security rounds, and in falsifying institutional records to conceal that failure, constitutes an extraordinary departure from what a reasonable correctional officer would do, evincing a wanton and reckless disregard for Mr. Scribner's life and safety.

60.By knowingly failing to perform their duties and falsifying records reflecting that performance, Defendants acted with wanton and willful disregard of Mr. Scribner's rights as if such rights did not exist.

61.As a direct and proximate result of Defendants' gross negligence, Mr. Scribner suffered significant physical pain and suffering, and ultimately loss of life, and Plaintiff has suffered severe emotional and economic damages as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, and attorneys' fees, and punitive damages in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

**COUNT IV**
**WRONGFUL DEATH**
**Md. Code Ann., Cts. & Jud. Proc. § 3-901, et seq.(Against All Defendants)**

62. Every paragraph not falling under this Count is incorporated herein by reference.

63. Defendants owed a duty to act reasonably toward Mr. Scribner and to provide proper supervision and safety precautions in light of the circumstances known to exist.

64. Defendants were on actual notice, through Plaintiff's July 12, 2023 communication, that Mr. Scribner's mother had concerns regarding his mental health, and were separately on notice, through Mr. Scribner's own same-day refusal to participate in a scheduled segregation review, of a change in his behavior and adjustment that, under DPSCS's own Clinical Guidelines for Suicide Prevention, warranted a Referral for Psychological Services (DPSCS Form 124-400-1) and a mental health assessment within two (2) hours. Despite this notice, and despite the duty Defendants had to protect Mr. Scribner from self-harm, Defendants failed to complete any such referral and failed to provide adequate supervision and/or safety precautions, including the failure to conduct mandated security rounds, which wrongfully caused or directly contributed to Mr. Scribner's death.

65. Despite this notice, and despite the duty Defendants had to protect Mr. Scribner from self-harm, Defendants failed to provide adequate supervision and/or safety precautions, including the failure to conduct mandated security rounds, which wrongfully caused or directly contributed to Mr. Scribner’s death.

66. As a direct and proximate result of Defendants’ negligent and/or grossly negligent breach of the duties owed to Mr. Scribner, for which Mr. Scribner would have been able to maintain an action against Defendants and recover damages had he lived, Mr. Scribner sustained fatal injuries and was pronounced dead on July 29, 2023.

67.This action is brought by Plaintiff Tionne Scribner as the surviving mother and a statutory wrongful death beneficiary of Mr. Scribner pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904.

68.As a direct and proximate result of Defendants’ negligence in causing Mr. Scribner’s death, Plaintiff has sustained damages including, but not limited to, funeral and burial expenses,

loss of financial support, undue emotional distress, mental anguish, loss of enjoyment of life, and loss of society, companionship, comfort, guidance, and support.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, and attorneys' fees, and punitive damages in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

**COUNT V**
**SURVIVORSHIP**
**Md. Code Ann., Est. & Trusts § 7-401(Against All Defendants)**

69.Every paragraph not falling under this Count is incorporated herein by reference.

70.Plaintiff Tionne Scribner is the appointed Personal Representative of the Estate of Evin Scribner.

71. Defendants owed a duty to exercise due care for the safety and security of those under correctional control, particularly Mr. Scribner, and failed in the exercise of that care, which caused or contributed to his tragic and untimely death.

72.Defendants were on actual notice that Mr. Scribner's mother had concerns regarding his mental health and, despite this notice, failed to provide adequate supervision or protective measures.

73.As a direct and proximate result of Defendants' breach of the duties owed to Mr. Scribner, Mr. Scribner suffered conscious pain and suffering prior to his death on July 29, 2023.

74.Plaintiff, as Personal Representative of Mr. Scribner's Estate, brings this action pursuant to Md. Code Ann., Est. & Trusts § 7-401 and is entitled to recover damages including, but not limited to, funeral and burial expenses and conscious pain and suffering.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, and attorneys' fees, and such other and further relief as the nature of the case requires.

**COUNT VI**
**NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**
**(Against Defendants DPSCS and Werner)**

75. Every paragraph not falling under this Count is incorporated herein by reference.

76. Defendants DPSCS and Werner had a duty to use reasonable care to select, hire, train, supervise, and retain employees who are competent and fit to perform the duties of a correctional officer, including compliance with mandatory security rounds and accurate recordkeeping. Under Maryland law, an employer who exercises control over the conduct of its employees may be held liable for negligent hiring, training, supervision, and/or retention where: (1) an employment relationship existed between the employer and the employee whose conduct is at issue; (2) the employee was incompetent; (3) the employer had actual or constructive knowledge of that incompetence; (4) the employee's act or omission caused the plaintiff's injuries; and (5) the employer's negligence in hiring, training, supervising, and/or retaining the employee was the proximate cause of the plaintiff's injuries. See Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty., 304 Md. 705, 501 A.2d 35 (1985); State v. Jones, 425 Md. 1, 38 A.3d 333 (2012); Bryant v. Better Bus. Bureau of Greater Md., Inc., 923 F. Supp. 720, 751 (D. Md. 1996).

77. Defendant Caskey and other correctional staff assigned to Tier H-1 were employees of DPSCS at all times relevant hereto.

78. Upon information and belief, Defendants DPSCS and Werner had constructive and/or actual knowledge of prior instances in which security rounds were not properly conducted and/or accurately logged at MCI-H, and/or that correctional staff assigned to sensitive supervisory posts, including tier supervision, had not been adequately screened, trained, or retained.

79. Despite having the duty and authority to properly hire, train, supervise, and retain correctional staff, Defendants DPSCS and Werner negligently failed to do so.

80. As a direct and proximate result of this negligent hiring, training, supervision, and/or retention, Defendant Caskey and other correctional staff were permitted to leave Tier H-1 unsupervised for extended periods and to falsify records reflecting compliance with security round requirements.

81. Had Defendants DPSCS and Werner exercised reasonable diligence, it would have been known that correctional staff assigned to Tier H-1 were failing to perform mandatory security rounds and misrepresenting their performance in the shift logbook.

82. As a direct and proximate result of Defendants' negligent hiring, training, supervision, and/or retention, Mr. Scribner suffered significant physical pain and suffering, and ultimately loss of life, and Plaintiff has suffered severe emotional and economic damages as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants DPSCS and Werner in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, and attorneys' fees, and such other and further relief as the nature of the case requires.

**COUNT VII**
**LONGTIN PATTERN OR PRACTICE OF IMPROPER CONDUCT**
**Articles 24 and 26**
**(Against Defendants DPSCS and Werner)**

83. Every paragraph not falling under this Count is incorporated herein by reference.

84. Plaintiff's state constitutional rights were violated as described elsewhere herein.

85. Defendants DPSCS and Werner are responsible for setting policy and procedures governing the conduct of MCI-H correctional employees, including policies regarding security rounds, recordkeeping, and response to notice of inmate mental health concerns.

86. Defendants DPSCS and Werner had a duty to ensure that MCI-H maintains customs, practices, and policies that protect inmates from known dangers, and a duty to discipline, retrain, or remove staff who fail to conduct their duties adequately, constitutionally, or lawfully.

87. Upon information and belief, Defendants DPSCS and Werner's pattern and practice of failing to enforce compliance with mandatory security rounds, of tolerating inaccurate or falsified logbook entries documenting those rounds, and of failing to complete Referrals for Psychological Services (DPSCS Form 124-400-1) and mental health assessments as required under DPSCS's own Clinical Guidelines for Suicide Prevention when inmates exhibit notice-triggering behavior, directly and proximately caused the deprivation of Mr. Scribner's constitutional rights under the Maryland Declaration of Rights, and represents not a single isolated incident but a recurring failure in the regular procedures followed by MCI-H correctional and mental health staff. [PLACEHOLDER — to be supplemented with evidence of prior similar incidents, or system-wide compliance data for Form 124-400-1 referrals, at MCI-H or within DPSCS, if available through discovery or MPIA request]

88. Defendants DPSCS and Werner should have foreseen that tolerating this pattern and practice would promote the proliferation of harm to inmates, including inmates with disclosed mental health concerns such as Mr. Scribner.

89. This pattern and practice reflects Defendants DPSCS and Werner's failure to establish effective procedures, rules, and guidelines to ensure routine, ongoing compliance with security round requirements, as opposed to compliance verified only after a fatality has already occurred, and their failure to ensure that violations are proactively detected and addressed before they result in serious harm or death.

90.As a direct and proximate result of the aforesaid acts, omissions, and customs of Defendants DPSCS and Werner, Plaintiff and Mr. Scribner were deprived of rights under Articles 24 and 26 of the Maryland Declaration of Rights, as detailed above.

91.Plaintiff pleads in the alternative that Defendants DPSCS and Werner acted at all relevant times with negligence, gross negligence, intent, and/or malice.

92.As a direct and proximate result of Defendants DPSCS and Werner's actions, Mr. Scribner suffered significant physical pain and suffering, and ultimately loss of life, and Plaintiff has suffered severe emotional and economic damages as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants DPSCS and Werner in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, and attorneys' fees, and punitive damages in an amount to be determined at trial, and such other and further relief as the nature of the case requires, including declaratory and injunctive relief declaring the conduct which is the subject of this Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

**JURY DEMAND**

Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,

HANSEL LAW, P.C.

/s/ Tiana Boardman

Cary J. Hansel (AIS No. 9912150020)
Tiana N. Boardman (AIS No. 2211280048)
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
tboardman@hansellaw.com
*Counsel for Plaintiff*